## COUNTY OF PENOBSCOT.

### GARMON *versus* INHABITANTS OF BANGOR.

A town is not liable for injuries to property, occasioned by defects in their highways, unless the person in charge of it, was in the exercise of ordinary care at the time of the injury.

What is "ordinary care" must be determined by the circumstances of the case presented to the jury.

*That question* cannot properly be ascertained by the jury, under a presentation of facts not arising out of the case on trial.

Unless they are instructed to ascertain and determine the use or want of "ordinary care," under the condition of things at the time of the accident, as disclosed by the testimony, it is good cause for setting aside the verdict.

ON EXCEPTIONS from *Nisi Prius*, APPLETON, J., presiding.

CASE, for damages sustained by reason of a defect in a highway in Bangor. The defect was a small hole in a culvert, about four feet from the end of it and about one foot outside of the wheel tracks or ruts. The plaintiff's horse, being driven by his son, fell into it and broke his leg. The plaintiff knew of the defect, but the son did not.

The defence in the case was, that the teamster was not in the use of ordinary care.

The son was returning home from Bangor with a pair of three year old colts in a sleigh, and when about three miles out of the city, about dusk, one Foster overtook him and attempted to pass, but failed to do so.

When the son was going up a hill, Foster went by him, but after traveling a short distance beyond, the plaintiff's son attempted two or three times to pass Foster, but did not succeed. At the time of the accident the plaintiff's son was attempting to pass Foster on the left, and there was more room to pass on the right of Foster's sleigh than on

the left. Two teams were close to them coming down on the same side the plaintiff's son was attempting to pass.

The Judge instructed the jury, upon the question of due care and diligence in driving, that the knowledge of the plaintiff of the defect in the highway was not the knowledge of his son who was driving the team; *that,* if the plaintiff did inform his son, then it was for them to consider whether the son was in the exercise of ordinary care and prudence in driving, and if he was not, the plaintiff would be responsible for such want of ordinary care, and was not entitled to recover; *that,* if the plaintiff did not inform his son of the defect, it was for the jury to determine whether he was guilty of neglect or want of ordinary care in neglecting so to inform him, and if so. he was not entitled to recover; *that,* as to the prudence with which the plaintiff's son was driving, the question was not what would have been his rights, in case a collision had taken place between him and Foster; nor whether he was driving with ordinary care, in reference to passing him, but whether he was passing with ordinary care and prudence over the road; *that* he had a right to pass one side or the other, and that they would consider whether, if the road had been clear, there was any want of ordinary care and diligence in driving on the one side of the road rather than on the other, or in the manner of his so driving, and if so, the plaintiff was not entitled to recover.

The jury returned a verdict for the plaintiff.

*A. Sanborn,* for defendant, cited Story on Agency, § 140; *Mayhew & al.* v. *Ease & al.,* 3 Barn. & Cress. 601; *Willis & al.* v. *Bank of England,* 4 Adol. & Ell. 21 and 39.

*J. A. Peters,* for plaintiff, cited *Reed* v. *Northfield,* 13 Pick. 94.

The opinion of the Court, SHEPLEY, C. J., and TENNEY, WELLS, HOWARD and RICE, J. J., WELLS, J., dissenting in part, was drawn up by

SHEPLEY, C. J. — As the plaintiff had knowledge of the

defect in the highway, by which the injury was occasioned, it is insisted, that his son, who was the teamster, must in law be regarded as having the same knowledge. The knowledge of a principal, it is said, is the knowledge of his agent. This may be correct with respect to knowledge, by which the rights of others may be affected in relation to the business to be performed with them by the agent. The rule does not extend to all the occurrences that may happen to the agent, while traveling to perform it, and by which the property of his principal may be injured.

When animals composing a team are injured by a defect in a way, those obliged to keep it in repair are relieved from responsibility, if the driver did not use ordinary care; and his knowledge of defects in the way, may be of importance to be considered. The knowledge of the owner of the team could have no influence upon his conduct.

The defendants could not have been aggrieved by the instructions on this point.

Two persons appear to have been passing in the same direction with a horse and sleigh, while the driver of the plaintiff's team was attempting to pass them, and he was about to meet other teams traveling on the same side of the way in an opposite direction, at the time of the injury.

The jury were instructed " that he had a right to pass one side or the other, and that they would consider, whether, if the road was clear, there was any want of ordinary care and diligence, in driving on the one side of the road rather than the other, or in the manner of his driving, if so, the plaintiff was not entitled to recover."

The question to be determined was, whether the teamster was in the use of ordinary care, under the circumstances and in the condition of the way, when others were traveling upon it.

Ordinary care, " if the road had been clear," might be very different from that care, when much of the way at that place was properly used by other persons. The words, " or in the manner of his driving," must have been understood

as having reference to that teamster's mode of driving, or to his mode of driving when the road was clear; not to his mode of conducting his team under the circumstances in which he was placed.

There appear to have been instructions applicable to other conditions, in which the jury might have considered the teamster as placed, but none distinctly presenting the question, whether he was in the use of ordinary care under the circumstances, in which he was actually placed.

*Exceptions sustained, verdict set aside,*
*and new trial granted.*

WELLS, J., dissenting. — I concur in the opinion on the first point. It was for the jury to judge, whether the omission of the father to inform his son of the defect was a want of ordinary care. There might be cases, where it would be very clearly the duty of the owner of the team, to communicate to the driver known defects in the highway. The decision of the question fell within the province of the jury.

In relation to the other portion of the opinion, it appears to me, that its conclusion is wrong. The defendants had mingled the conduct of the driver, as a traveler upon the road, with his actions in reference to Foster. Now he may not have conducted with propriety in reference to Foster, while he has so done as a traveler in relation to the road. It was necessary for the Judge to separate those ideas. He did so by saying in substance, that the jury should regard the driver's mode of traveling irrespective of Foster or the treatment of him. It had been previously stated that the son must exercise ordinary care and prudence.

The driver's conduct towards Foster, whether good or bad, cannot determine his rights in regard to the town. The meaning of the Judge appears to be, that the jury are to look at the mode of traveling upon the road, as if the road were clear, not how the driver treated Foster. The whole of the last instruction is intended to illustrate the same idea, and is to be taken together to ascertain its meaning.